# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ERIC BING, | : | **Civil Action No. 17-8189 (ES)** |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **OPINION** |
|  | : |  |
| UNITED STATES OF AMERICA, | : |  |
|  | : |  |
| Respondent. | : |  |
|  | : |  |

**SALAS, DISTRICT JUDGE**

## I.      INTRODUCTION

Petitioner Eric Bing ("Petitioner"), a prisoner currently confined at FCI Fort Dix, moves to vacate, correct, or set aside his federal sentence pursuant to 28 U.S.C. § 2255.  (D.E. No. 1 ("Petition")).  Respondent, United States of America ("Respondent"), opposes the motion.  (D.E. No. 8 ("Answer")).  For the reasons explained in this Opinion, the Court denies the motion and denies a certificate of appealability.

## II.      BACKGROUND

Petitioner was charged in the United States District Court for the District of New Jersey in a one-count information to knowingly possessing material that contained at least three images of child pornography, as defined in 18 U.S.C. § 2256(8).  The images had been mailed, shipped, and transported using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, by any means, including by computer, and which were produced using materials that had been mailed, shipped, and transported in and affecting interstate and

foreign commerce by any means, including by computer, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2. (D.E. No. 1-2 ("Appendix Vol. 1") at A21).

In 2008, a female fourteen-year old victim living overseas sent an email to a website purportedly associated with a Russian music group she admired. (*See* Presentence Investigation Report, hereinafter "PSR" ¶ 16).[1] She received a reply email from someone who claimed to be the female lead singer of the music group and subsequently began regular communication with the singer using email, chat, video games and a one-way web cam. (*Id.*). The singer eventually asked the victim to send her increasingly explicit pictures and videos of herself in various states of undress, including full frontal nudity. (*Id.*).

Between approximately 2010 and 2011, the "singer" revealed his true identity as "Eric," an individual in New Jersey, who was subsequently identified as the Petitioner. (*Id.* ¶ 17). The victim became upset and stopped communication with Petitioner for some time but resumed communication "as to not to make an enemy of him." (*Id.*). Petitioner began harassing the victim via email, social media and telephone. (*Id.* ¶ 18). He called the victim's place of employment and her family member's place of employment several times a day. (*Id.*). Further, in 2014, he sent flowers and a birthday cake to the victim's residence. (*Id.*).

By September 2014, online communication with Bing was assumed by undercover law enforcement agents posing as the victim. (*Id.* ¶ 20). In these conversations, Petitioner referenced videos sent to him by the victim in 2009, when she was sixteen, and commented on how young the victim looked in the video. (*Id.* ¶¶ 21–22). In another conversation, Petitioner revealed that he was aware of the victim's age in 2008 through 2009. (*Id.* ¶ 24). Petitioner sent the agents, who

---

[1] The PSR is generally not filed on the docket due to the sensitive information contained therein, however, the Court will reference relevant details in the document in this Opinion.

were posing as the victim, videos from 2008 to 2009 depicting child pornography involving the victim.  (*Id.* ¶¶ 27–28).

In November 2014, a search warrant was executed at Petitioner's home, and Petitioner was interviewed.  (*Id.* ¶¶ 29–30).  Petitioner identified computer equipment he owned and email addresses he used, including the one he used to communicate with the victim.  (*Id.* ¶ 30).  Petitioner admitted his relationship with the victim and admitted to recording the web cam sessions with the victim with her clothes off.  (*Id.* ¶¶ 32–33).  Law enforcement agents were able to retrieve, among other things, a hard drive that contained approximately eleven videos containing child pornography of the victim.  (*Id.* ¶ 38).

On March 21, 2016, Petitioner pled guilty before this Court to the one-count information pursuant to a written plea agreement.  (*See* Appendix Vol. 1 at A56).  Petitioner's plea agreement included, among other things, a stipulation waiving any appeal, collateral attack, writ, or motion after sentencing, including but not limited to an appeal under 18 U.S.C. § 3742 or a motion under 28 U.S.C. § 2255.  (Appendix Vol. 1 at A13).

Prior to sentencing, the United States Probation Office prepared the PSR.  The PSR calculated an 18-base offense level.  (PSR ¶ 59).  Petitioner received a five-level increase pursuant to United States Sentencing Guidelines (hereinafter, "USSG") § 2G2.2(b)(5) because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.  (*Id.* ¶ 60).  Petitioner also received a two-level increase pursuant to USSG § 2G2.2(b)(6) because the offense involved the use of a computer or an interactive computer service for the possession, transmission, and receipt of the material, or for accessing with intent to view the material.  (*Id.* ¶ 61).  Petitioner received a five-level increase pursuant to USSG § 2G2.2(b)(7) because the offense involved eleven videos, or the equivalent of 825 images.  (*Id.* ¶ 62).  The PSR then suggested a

two-level decrease from the total offense level for acceptance of responsibility under USSG § 3E1.1(a), and one level for acceptance of responsibility pursuant to USSG § 3E1.1(b)(2). (*Id.* ¶¶ 68–69). Thus, the PSR calculated a total offense level of 27. (*Id.* ¶ 70). The PSR determined a criminal history score of 0 and a corresponding criminal history category of I. (*Id.* ¶ 76). Petitioner's total offense level and criminal history category resulted in a guideline imprisonment range of 70 to 87 months. (*Id.* ¶ 116).

While on pre-trial release, Petitioner attended weekly individual counseling sessions with Dr. Peter DeNigris of Somerset Psychological Group. (*Id.* ¶ 91). Dr. DeNigris confirmed to the probation office that he did not render any diagnosis, and Petitioner was not prescribed any medication. (*Id.*). Between June 2015 and June 2016, Petitioner attended forty-five sessions with the psychologist. (*Id.* ¶ 92). Petitioner also indicated that he was evaluated by Dr. DeNigris at defense counsel's request during plea negotiations. (*Id.* ¶ 93).

In his pre-sentence interview with the probation department, Petitioner appeared to minimize his role in the relationship with the victim by representing, among other things, that: (i) the victim initiated contact with him; (ii) he did not have knowledge of her minor status during parts of their relationship; and (iii) he did not intentionally store the child pornography videos of the victim. (*Id.* ¶ 55). Petitioner further stated that "crooked prosecutors" were responsible for "[making it] something it's not." (*Id.* ¶ 56).

The parties submitted sentencing memoranda to the Court in advance of the sentencing hearing, and the Court also received Petitioner's character letters and a letter from a psychologist, Dr. Hiscox, who evaluated Petitioner. (Appendix Vol. 1 at A59–A61). At Petitioner's sentencing on September 22, 2016, Petitioner was represented by Robert Scrivo, Esq. and Andrew Gimigliano, Esq. (*Id.* at A59). At the hearing, defense counsel argued that certain mitigating

factors should influence the Court's decision, including aspects of Petitioner's personal history, intellectual ability, strained familial relations, social isolation, and the loss of his father to terminal cancer and its cumulative effect on Petitioner. (*Id.* at A68–A74). Many of defense counsel's arguments echoed the mitigating arguments made in a detailed sentencing memorandum, which highlighted Petitioner's childhood and young adult years.[2] The Court also heard a victim impact statement from the victim's mother. (*Id.* at A98–A100).

Prior to sentencing Petitioner, the Court expressed its concern and dismay about Petitioner's behavior while on pre-trial release, as reported in the PSR. (*Id.* at A63–64). Pretrial Services, who supervised Petitioner while he was on pre-trial release, submitted a memorandum to the Court about Petitioner's untoward conduct. (PSR ¶¶ 9–12). Pretrial Services cited multiple routine home visits in August 2015, where Petitioner was belligerent to the officers, used profanity, and questioned the reason for the visit. On one occasion, the Pretrial Officer decided to prematurely end the visit, citing safety concerns. (*Id.*). As a result of Petitioner's behavior, Pretrial Services conducted an administrative hearing at which Petitioner acknowledged his behavior and agreed to become compliant. (*Id.* ¶ 11). Nevertheless, Petitioner continued to exhibit belligerent behavior in a subsequent visit. (*Id.* ¶ 12). At an October 29, 2015, bail review hearing, United States Magistrate Judge Michael Hammer ordered Petitioner to submit to Pretrial Services' use of electronic detection devices to evaluate his access to internet connections and to comply with any request by Pretrial Services. (*Id.* ¶ 13).

When fashioning its sentence, the Court considered the nature of the offense, specific deterrence—more specifically Petitioner's apparent difficulty understanding what he had done wrong—general deterrence, and Petitioner's personal history and characteristics. (Appendix Vol.

---

[2] The parties' sentencing memoranda were not filed on the docket.

1 at A109–116).  Ultimately, the Court sentenced Petitioner to a high-end guideline sentence of 86

months, followed by a three-year term of supervised release.  (*Id.* at A119).

Petitioner did not file a direct appeal.  (Petition at 3).  Petitioner filed the instant motion to

vacate, set aside, or correct his conviction or sentence under 28 U.S.C. § 2255 on October 12,

2017.  (D.E. No. 1).  Petitioner argues that he is entitled to relief under 28 U.S.C. § 2255 on the

ground that he received ineffective assistance of counsel in violation of his rights under the Sixth

Amendment to the Constitution.  (D.E. No. 1-1 ("Mov. Br.") at 5).

## III.    LEGAL STANDARDS

### A.  Section 2255 Standard

Section 2255 provides in relevant part that:

> [a] prisoner in custody under sentence of a court established by Act
> of Congress claiming the right to be released upon the ground that
> the sentence was imposed in violation of the Constitution or laws of
> the United States ... may move the court which imposed the sentence
> to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  A district court must hold an evidentiary hearing on a § 2255 motion unless

the "motion and the files and records of the case conclusively show" that the movant is not entitled

to relief. 28 U.S.C. § 2255(b); *see also United States v. Booth*, 432 F.3d 542, 545–46 (3d Cir.

2005).

### B.  Ineffective Assistance of Counsel

The United States Supreme Court has set forth the two-prong standard by which courts

must evaluate claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S.

668, 687 (1984).  "The first part of the *Strickland* test requires 'showing that counsel made errors

so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth

Amendment.'" *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015) (quoting *Strickland*, 466

U.S. at 687).  Counsel's performance is deficient if his representation falls "below an objective standard of reasonableness" or outside of the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 688 & 690.  In examining the question of deficiency, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.  In addition, judges must consider the facts of the case at the time of counsel's conduct and must make every effort to escape what the *Strickland* court referred to as the "distorting effects of hindsight." *Id.*  The petitioner bears the burden of showing that counsel's challenged action was not sound strategy. *See Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).  To satisfy the second "prejudice" prong, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Rainey v. Varner*, 603 F.3d 189, 201 (3d. Cir. 2010) (quoting *Strickland*, 466 U.S. at 697)).

## IV.    ANALYSIS

Petitioner, through counsel, submits that his trial counsel was ineffective because of his failure to seek any additional psychological evaluation that would have assisted the Court in understanding Petitioner's improper behavior with Pretrial Services, and may have provided an explanation for the perception that he lacked remorse for his crime in the months leading up to his sentencing.  (Mov. Br. at 7).  Petitioner's post-conviction counsel enlisted the assistance of Dr.

Charles Martinson, M.D., a forensic psychiatrist for a psychological evaluation of Petitioner. (*Id.* at 10). Dr. Martinson reviewed Petitioner's case file and met with Petitioner for two and a half hours at the correctional facility where he is housed. (*Id.*). Petitioner argues that this psychological evaluation, which occurred *after* his sentencing and while Petitioner was incarcerated, supports the fact that his behavior may have been symptomatic of someone living with Asperger's Disorder or "high functioning Autism." (*Id.* at 4 & 12). Based on this, Petitioner submits that further extensive testing is necessary for a conclusive diagnosis. (*Id.* at 12).

Respondent submits that Petitioner's arguments are speculative, and that Petitioner has not established that counsel's performance was deficient, or that the result of the sentencing hearing would have been different if he had been reevaluated. (*See generally* Answer). Respondent also points out that Petitioner in fact received a relatively lenient sentence because of his counsel's ability to persuade the Government and the Court that the mitigating factors should be taken into consideration. (*Id.* at 15).

The Court agrees that Petitioner fails to demonstrate either prong under the *Strickland* standard. First, under the "highly deferential" standard of review, the Court cannot say that counsel's conduct fell below the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. As Petitioner acknowledges, after pretrial services ordered mandatory psychological counseling, "[c]ounsel appropriately sought his own psychological evaluation." (Mov. Br. at 8). Petitioner also acknowledges that "Defense counsel submitted a voluminous sentencing memorandum . . . [which] attached substantial mitigating information in the form of Dr. Hiscox report . . ." (Mov. Br. at 4). Nevertheless, Petitioner argues that Petitioner's behavior with pretrial services *after* Dr. Hiscox submitted his evaluation report should have caused counsel to seek a supplemental evaluation. (Mov. Br. at 8). But considering that Petitioner had already

attended forty-five sessions with a psychologist between June 2015 and June 2016 (PSR ¶ 92), and that counsel had an independent evaluation performed, the Court cannot conclude that counsel's failure to obtain yet another report fell below the objective standard of reasonableness called for in *Strickland*, 466 U.S. at 690. Moreover, to the extent Petitioner relies on Dr. Martinson's report, which occurred *after* sentencing and while Petitioner was already incarcerated, to demonstrate that counsel's conduct was deficient, such an argument improperly relies on the "distorting effects of hindsight" that this Court should avoid in assessing any motion for ineffective assistance of counsel. *See McBride v. Houtzdale*, 687 F.3d 92, 102 (3d Cir. 2012) (quoting *Strickland*, 466 U.S. at 689). Accordingly, based on the information that was available at the time of counsel's conduct, and considering the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," the Court cannot conclude that counsel's conduct was deficient. *Strickland*, 466 U.S. at 689.

Second, even if Petitioner could show that counsel's conduct was deficient, he fails to demonstrate prejudice. "In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence." *Wiggins v. Smith*, 539 U.S. 510, 534 (2003). Here, the Court was presented with a host of factors—aggravating and mitigating—before fashioning an appropriate sentence. As for aggravating factors, the Court spoke about the nature of the offense, particularly the fact that Petitioner lured his underage victim by pretending to be a pop musician. (Appendix Vol. 1 at A102–103). The Court also considered Petitioner's extremely hostile and aggressive behavior with the arresting agents who appeared at his home (*id.* at A104–105), as well as his efforts to minimize his illegal conduct during his interview with the probation office (*id.* at A63–64). But the Court was also presented with a variety of mitigating factors that could have explained some of this behavior. As the Court has already discussed, defense counsel presented

the Court with a variety of mitigating evidence, including, among other things, aspects of Petitioner's personal history, intellectual ability, strained familial relations, social isolation, and the loss of his father to terminal cancer and its cumulative effect on Petitioner. (*Id.* at A68–A74). Particularly relevant to Petitioner's arguments here, Defense counsel highlighted for the Court that Petitioner "is not really capable of telling lies and falsehoods," but "is capable of [ ] misunderstanding social cues." (*Id.* at A69). Counsel also highlighted Petitioner's auditory learning disability, his history in special education classes, and his "below average intellectual ability in reading and math." (*Id.* at A69–70). Additionally, defense counsel made certain that the Court was aware of Dr. Hiscox's evaluation of Petitioner and Petitioner's "problems with verbal comprehension, verbal expression, visual processing, nonverbal reasoning, focusing." (*Id.*).

Notwithstanding the detailed exploration of both mitigating and aggravating factors in the record, Petitioner argues that "additional understanding of [Petitioner's] behavior . . . has a high likelihood of reducing that sentence." (Def. Mov. Br. at 14). But considering defense counsel's extensive discussion, in both the submissions to the Court and at the sentencing hearing (Appendix Vol. I at A68-74), about the potential explanations for Petitioner's behavior, the Court cannot agree. Petitioner has simply not demonstrated how an additional evaluation—which may or may not have resulted in any *additional* information to explain or justify Petitioner's behavior—would have affected the outcome of the proceeding in a manner that was beneficial to the Petitioner. Therefore, Petitioner's insistence that additional observation by psychological professionals before he was sentenced would have affected the outcome of the proceeding and ultimately his sentence, does not pass muster.

Accordingly, the written submissions and the record before the Court conclusively demonstrate that Petitioner is not entitled to relief on this claim.

## VI. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(2), a petitioner may not appeal from a final order in a proceeding under § 2255 unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). As Petitioner's claims are either barred or without merit, he has failed to make a substantial showing that he was denied a constitutional right. Because Petitioner has failed to make such a showing, no certificate of appealability shall issue.

## V. CONCLUSION

For the reasons discussed above, Petitioner's § 2255 motion is denied. An appropriate order accompanies this Opinion.

<u>s/Esther Salas</u>
**Esther Salas, U.S.D.J.**